**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0035n.06

**No. 09-3834**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 13, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ARTURO GIRON-TRUJILLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | FINAL ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., UNITED STATES | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |

Before:  SILER, GILMAN, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge.  Arturo Giron-Trujillo ("Giron") seeks withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT").  He contends he will be subject to persecution and torture if returned to Guatemala. The immigration judge ("IJ") rejected Giron's claims, and the Board of Immigration Appeals ("BIA") affirmed without opinion.  For the reasons stated below, we **DENY REVIEW**.

**I.**

Giron is a native and citizen of Guatemala. He illegally entered the United States through Mexico in 1997.  His wife, Ednar Giron ("Ednar"), is also in the United States illegally.  The INS initiated removal proceedings against him by filing a Notice to Appear.

Giron appeared before an IJ and conceded his removability, but asked for withholding of removal under the INA and the CAT.[1] He filed an I-589 application with the IJ, and a removal hearing was later held in which both Giron and Ednar testified. Giron detailed multiple concerns he held about returning to Guatemala.

Giron first testified that his uncle, who owned a funeral home and night clubs in Guatemala, was rich. Because of this, individuals had robbed his uncle and tried to kidnap his children to extort money. Giron said he feared people would harm him to extort his uncle. He could not, however, name a family member who had been harmed because of his uncle.

Giron next claimed that, because his brother was a former gang member in Guatemala, individuals whom his brother had harmed, as well as the members of the gang he left, might try to harm Giron for revenge, if he returned.

Giron stated the Guatemalan government would provide him no protection because "they're not interested in protecting people." He also suggested police corruption was an issue, stating the police "establish a lot of relations with the people that steal."

Ednar testified about an incident in which individuals dressed in military uniforms stopped the car in which she was traveling and attempted to rape her and another female. Another passing car interrupted the assault, but Ednar stated the perpetrators took her personal information and informed her they knew where she lived. She detailed another incident in which the bus on which

---

[1] Giron did not seek asylum because such a claim was time-barred.

she was traveling was robbed and the driver was killed. Ednar did not report either of these incidents to the Guatemalan police.

Ednar also testified that a politically active cousin had received anonymous threats and was forced to hide his daughters to keep them from being kidnaped—putting any relatives at risk as a means of extortion. Further, according to Ednar, Guatemalan gangs impose a sort of tax on small businesses, for which the penalty for nonpayment is death. Ednar did not believe the police could protect her and her husband in Guatemala because of insufficient resources and corruption. She was, however, unable to offer any evidence of corruption.

The IJ denied Giron's request for withholding of removal, but found Giron and Ednar to be credible. The IJ concluded the evidence in the record did not establish Giron's eligibility under the INA because Giron neither established that he was the victim of past persecution in Guatemala, nor that it was more likely than not he would be the victim of future persecution based on a protected ground if returned to Guatemala. The IJ also held that Giron did not establish his eligibility under the CAT, because Giron experienced no torture before leaving Guatemala and there was no evidence suggesting "any even reasonable risk of future torture should he return to that country today." The BIA affirmed without opinion.

**II.**

Where the BIA affirms the decision of the IJ without issuing an opinion, this court reviews the decision of the IJ directly. *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005). We affirm the IJ's factual findings where "substantial evidence supports such determinations." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). "[I]n order to reverse . . . factual determinations, the

reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (citations omitted).

Giron first seeks withholding of removal under the INA. "[T]o qualify . . . the applicant must establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Ndrecaj v. Mukasey*, 522 F.3d 667, 677 (6th Cir. 2008) (internal citations and quotation marks omitted). This standard requires the applicant to show a "clear probability" of persecution on account of a protected ground. *INS v. Stevic*, 467 U.S. 407, 413 (1984).

To establish persecution, an applicant must show some level of "physical harm and suffering" and that "he or she was specifically targeted by the government for abuse based on one of the statutorily protected grounds." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). Assuming Giron can show that any persecution he might endure will be by the Guatemalan government, he still cannot show a clear probability he will be persecuted if removed to Guatemala.

Giron did not offer any proof to establish past persecution. He therefore must establish a clear probability of future persecution to avoid removal. Giron contends that his membership in various social groups demonstrates a clear probability of future persecution if returned to Guatemala. We make no ruling concerning whether Giron has established membership in a qualifying social group. Rather, no matter the group to which Giron might be attributed status, he cannot establish a sufficient probability of persecution on that basis.

Merely having a rich uncle is insufficient to establish a clear probability of persecution. Giron produces no evidence to show that individuals attempting to extort his uncle are aware of

Giron's relationship. Further, even if the same individuals were aware of Giron's connection and would attempt to harm Giron to get to his uncle, this would not qualify. Harm for financial gain is not persecution within the meaning of the INA. *See, e.g.*, *Lopez-Castro v. Holder*, 577 F.3d 49, 54 (1st Cir. 2009).

Likewise, there is no evidence that people with a motive to harm Giron's former gang-member brother desire to hurt Giron. And, even if there was, "[a]sylum is not available to an alien who fears retribution solely over personal matters." *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008).[2]

The two incidents of violence involving Ednar, as well as the exhibits detailing the general level of violence in Guatemala, do not suggest specific individuals were targeted. Rather, both suggest general, indiscriminate violence—something that unfortunately appears to be very prevalent in Guatemala. Fear of random violence and persecution is "generally insufficient to establish persecution." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2008).

Finally, Ednar offered no evidence that she was targeted because of her politically active cousin, much less that Giron would be targeted on that basis.

Giron also seeks withholding of removal under the CAT. To be eligible, the applicant must show "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c); *Rreshpja*, 420 F.3d at 557. Torture requires "severe pain or

---

[2]Asylum is a lower standard than withholding of removal under the INA. *Pilca v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Therefore, if a personal dispute is insufficient to qualify for asylum, it is also insufficient to justify withholding under the INA.

suffering, whether physical or mental," *Rreshpja*, 420 F.3d at 557 (quoting *Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001)), and an applicant must show either consent by a government official or that "prior to the activity constituting torture," the official had "awareness of such activity and thereafter breach[ed] [his] legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18.

Giron offered no evidence that he had previously been tortured, and the only evidence to support his claim that he will "more likely than not" be tortured on his return to Guatemala is the same evidence that was insufficient to show "more likely than not" he will be subject to persecution. Therefore, he cannot establish a sufficient likelihood of torture to qualify for withholding under the CAT. He also cannot show involvement by the Guatemalan government in any potential torture.

**REVIEW DENIED**.